# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID AVILA,<br><br>          Petitioner,<br>v.<br><br>L.E. SCRIBNER, Warden,<br><br>          Respondent. | Civil No.07cv1709 L (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 1] |

David Avila (Avila or Petitioner), a California prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2254. Petitioner contests his confinement on the bases that (1) he was denied his fourteenth amendment due process rights because (a) the parole board denied him parole solely based on unchanging, immutable factors, (b) his committed offense is not particularly egregious and should not have been used as a primary factor to deny him parole; (c) the parole board delayed his parole hearing; and (2) his eighth amendment rights were violated because the delay in his parole hearing unlawfully and systematically prolonged his incarceration.

Respondent filed an answer, arguing that the Court should deny the Petition. Specifically, Respondent contends that (1) Petitioner has no federally-protected liberty interest in parole; (2) even if this Court recognizes such an interest, Petitioner received all the process he was due in connection with that interest, and therefore the state court's determinations do not contradict clearly established federal law nor unreasonably apply the facts to the governing federal laws; and (3) Petitioner fails to state a cognizable claim for habeas relief under the eighth amendment. Petitioner filed a traverse. This Court

has reviewed the Petition, answer, traverse, lodgment and the complete record in this case. After a thorough review, the Court **RECOMMENDS** that the Petition be **DENIED** in its entirety.

### RELEVANT FACTS.[1]

**The Underlying Offense.**

On the night of February 5, 1986, nineteen-year-old Michael Bergman went to a liquor store in Fresno, California. He bought a few items and returned to his car. At the car, Avila's co-defendant, Arthur Sambrano, said to Bergman: "give me that wallet, you want to live or you want to die?" Sambrano grabbed Bergman's wallet and a struggle ensued. Avila then approached the victim, holding a black-handled knife. As Avila reached into the car with the knife, Bergman handed over his wallet. Avila and Sambrano left, and appeared to be laughing as they went through Bergman's wallet.

Bergman quickly drove away. He drove to his girlfriend's house–where he had been visiting before he drove to the store–and got out of the car. His girlfriend and her friend discovered him lying face down in the driveway. They noticed he was not breathing and called the police and paramedics. Police found a single stab wound on the left side of Bergman's chest. Bergman had died.

On August 11, 1986 Avila plead guilty to first degree murder. Lodgments 1-3. He received a sentence of 25 years to life. *Id.*

**Pre-commitment Factors.**

Avila was 22 years old at the time of the murder. His pre-commitment history included several arrests as a juvenile, but none of those arrests resulted in a conviction. *Id.* at 39. He did, however, spend 90 days in juvenile hall. *Id.* He also spent 30 days in county jail as an adult. *Id.* at 40. Avila graduated from high school and worked in construction from the time of his graduation to just before his commitment offense. *Id.* at 48. At the time of the offense, Avila had just been laid off from work. *Id.*

**Post-commitment Factors.**

Avila stopped using drugs in 1998, the same time he received his last disciplinary report. *Id.* at 53. Since at least 1998 Avila has participated in Alcoholics Anonymous (AA) and Narcotics Anonymous (NA). *Id.* at 59. He is also in another self-help program, Life Without a Crutch. *Id.* He

---

[1] Unless otherwise noted, the following facts are summarized from the probation report [Lodgment 3] that the Parole Board read into the record. Lodgment 5 at 14-22.

1  attends three classes a week. *Id.* Avila has received a number of certificates for work, such as in
2  furniture refinishing and upholstery. *Id.* at 54; *see* Pet'n Ex. E (copies of all certification, chronos and
3  work reports). He is also licensed as a forklift driver. *Id.* at 73. Avila has participated in the Joint
4  Venture program. *Id.* He has saved approximately $13,000 for his parole account. *Id.* at 55.

5  **The Parole Hearing.**

6       Avila became eligible for parole on July 6, 2004. Lodgment 5 at 1. After a delay of six months,
7  the Board of Parole Hearings (Board) held his second parole hearing on January 10, 2006 at Calipatria
8  State Prison. *Id.; see id.* at 90. Avila was represented by state-appointed counsel. *Id.* at 1-2. No
9  District Attorney appeared at that hearing. *Id.* at 7.

10       Avila presented laudatory letters from correctional officers regarding his good behavior and
11  courteous treatment of staff. *Id.* at 62-63. He provided several letters from family members who would
12  like to help him out and bring him back into the family with job offers, financial support and a vehicle.
13  *Id.* at 74-77; *see* Pet'n Ex. G (letters of support). The psychological report about Avila reported that he
14  appears to be making a successful transition from a gang-oriented lifestyle to a more responsible
15  lifestyle. *Id.* at 64-65. It also noted that "significant risk factors would include relapse into substance
16  abuse, association with criminal elements or being threatened due to his dropout status. He appears to
17  have good support with his family and AA. He appears to be motivated to succeed to help himself, his
18  wife and his children." *Id.* at 85.

19       After deliberations, the Board found Avila was "not suitable for parole and would pose an
20  unreasonable risk of danger to society or a threat to public safety if released from prison." *Id.* at 82.
21  The Board relied on these factors: the offense was committed in an especially cruel and violent
22  manner–an unarmed man stabbed and killed for his wallet; the motive was trivial in comparison to the
23  actual offense; Avila was under the influence of drugs and alcohol and does not remember much of the
24  crime period, so that he may not have much insight into his responsibility for the crime; he had an
25  escalating pattern of criminal conduct and failed to profit from society's previous attempts to correct his
26  criminality; Avila had a record of two 128 chronos (the last one in 1998 for having contraband) and 16
27  serious 115 disciplinary reports (70% were violent in nature; the last one was in 1998 for mutual
28  combat); the psychiatric report was not totally supportive; Avila had a placement score of 117 due to his

prior disciplinary problems that he must lower; and Avila's positive progress is only relatively recent. *Id.* at 84-87.

On the plus side, the Board noted that Avila does have a viable residence outside of his last county of legal residence, acceptable employment plans and marketable skills. *Id.* at 85-86. They commended his vocational pursuits, commitment to AA and NA and lack of disciplinary reports in the previous eight years. *Id.* at 87. The Board recommended that Avila remain discipline-free, upgrade vocationally and educationally if possible and keep participating in self-help programs. *Id.* at 89. Parole was denied for two years from the January 2006 hearing. *Id.* at 90, 92.

**The State Court Decisions.**

On November 26, 2006 Avila filed a habeas petition with the Fresno superior court. Lodgment 6. That court denied his petition, finding that the Board's decision to deny parole was supported by some evidence. Lodgment 7 at 3. The court stated:

> Here, the court finds that there was at least some evidence that releasing petitioner could pose an unreasonable risk to society or a threat to public safety, because of the violent nature of the original offense and petitioner's multiple disciplinary reports since becoming incarcerated, many of which were of a violent nature. Indeed, petitioner admits to stabbing another inmate on one occasion. (Transcript at 53). Petitioner also admits that he did not stop using drugs until 1998, and that his last disciplinary report was in 1998. (*Ibid.*)

*Id.*

Avila filed another habeas petition with the court of appeal. Lodgment 8. That court summarily denied the petition on April 3, 2007. Lodgment 9. He then filed a petition for review with the California supreme court. Lodgment 10. The state supreme court denied the petition without comment on June 26, 2007. Lodgment 11.

### LEGAL STANDARD

**AEDPA Governs this Petition.**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Petition. *See Lindh v. Murphy*, 521 U.S. 320, 336-337 (1997). Under AEDPA, a federal court will not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the decision was (1) contrary to or involved an unreasonable application of clearly established federal law; or (2) based on an

unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002). "Clearly established federal law," for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

**Decisions that Contradict or Unreasonably Apply Federal Law.**

A federal habeas court may grant relief where the state court (1) decides a case "contrary to" federal law by applying a rule different from the governing law set forth in Supreme Court cases; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may also grant habeas relief where a state court decision is an "unreasonable application" of federal law, such as where the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies those decisions to the facts at issue. *Id.*

The state court decision must be more than incorrect or erroneous; to warrant habeas relief the state court's application of "clearly established federal law" must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "Objectively unreasonable" differs from "clear error" in that a federal court cannot grant habeas relief only because it believes that the state court erroneously or incorrectly applied "clearly established federal law;" the application must be objectively unreasonable. *Id.* at 75-76 (internal citation omitted).

**Decisions Based on an Unreasonable Determination of the Facts.**

Section 2254(e)(1) provides: "[a] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*.

## DISCUSSION

Petitioner asks that this Court modify the decision of the Board of Parole Hearings of January 10, 2006. He requests these changes be made: (1) that the committed offense not be deemed "more violent or aggravated than the minimum to sustain his conviction" or "particularly egregious" to justify denial of parole; (2) the Board not continue to rely on "unchanging factors" to deny Petitioner parole; (3) order the Board to subtract the time his parole hearing was involuntarily delayed without notice from

1 the two years he has to wait for his next parole hearing, or, subtract the time he was delayed from parole
2 itself; and (4) order the Board to convene a fair and impartial hearing and set a parole date, or, release
3 Petitioner on parole and credit his parole with the number of days during which he was imprisoned
4 beyond the parole date.  Pet'n Attachment pp.1-2.

**I.    Due Process Claims.**

      **A.    Petitioner's Liberty Interest in Release on Parole.**

Clearly established federal law provides that Petitioner may demonstrate a procedural due process violation by showing (1) a federally-protected life, liberty or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of that interest were constitutionally insufficient. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S 454, 460 (1989).  The Supreme Court found the expectancy of release provided in a Nebraska parole statute "is entitled to some measure of constitutional protection," but because the language and structure of the statute was unique, "whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis."  *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 12 (1979); *see Bd. of Pardons v. Allen*, 482 U.S. 369, 377-378 (1987) (holding that mandatory language in Montana parole statute created a presumption that parole will be granted which gave rise to a protected liberty interest).  A parole board satisfies due process in a state parole hearing where the state parole procedures afford (1) an opportunity to be heard; and (2) a statement of reasons for denying the parole. *Id.* at 16.

Mandatory language in the California parole statute, Cal. Penal Code § 3041, "gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  This liberty interest is "created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003).  Even though the California Supreme Court has held that § 3041's language does not establish a mandatory duty to set a release date for indeterminate life inmates, *In re Dannenberg*, 34 Cal.4th 1061 (2005), California prisoners maintain a liberty interest in release on parole. *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

/ / /

### *1.   The "Some Evidence" Standard.*

Due process requires that "some evidence" exist in the record to support the parole board's decision. *Id.* at 1128. The relevant inquiry is whether "any evidence in the record . . . could support the conclusion reached by the disciplinary board." *Id.* (quoting *Superintendent of the Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-456 (1985)). The evidence the parole board relies on "must have sufficient indicia of reliability," and "continued reliance in the future on an unchanging factor, [such as] the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 915-917.[2]

### *2..   Whether the "Some Evidence" Standard is Clearly Established Federal Law.*

The Ninth Circuit has reiterated that the *Greenholtz*, *Allen* and *Hill* standards are clearly established federal law for AEDPA purposes applicable to parole hearings such as the one at issue here. *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), *rehearing denied*, 506 F.3d 951 (9th Cir. 2007). Respondent argues that Petitioner has no federally-protected liberty interest in parole (Answer ¶¶ 12-13), but that even if he does, only the "opportunity to be heard" and the "statement of reasons for the denial" requirements constitute clearly established federal law applicable to state parole proceedings. Mem. Ps&As, p.10, ll.7-11. Respondent acknowledges that the Ninth Circuit has already decided these issues in *Sass* and *Irons*, but contends that intervening United States Supreme Court authority has effectively overruled those cases. Mem. Ps&As, pp.12-14. Specifically, Respondent argues that *Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649 (2006) and *Schriro v. Landrigan*, 550 U.S. ___, 127 S.Ct. 1933 (2007), impliedly overruled the Ninth Circuit's extension of the "some evidence" rule of *Hill* from the prison disciplinary context to the parole hearing context.

In *Musladin*, several members of a murder victim's family sat in the front row of the spectator

---

[2] A panel in the Ninth Circuit recently found in *Hayward v. Marshall*, 512 F.3d 536, 546 (9th Cir. 2008) that California prisoners have a protected liberty interest in release on parole, that due process is violated unless there is "some evidence" in the record to support the decision or the decision is "otherwise arbitrary," and that the continued reliance on static factors to deny parole violated due process. The court found that under the unique circumstances of this case the state could not continue to rely on the static factors of petitioner's commitment offense because, due to the passage of 25 years, as well as his rehabilitation, education and conduct while in prison, the commitment offense alone could not demonstrate that his release would pose an imminent danger to public safety. These holdings, however, are no longer supported by precedent in the Ninth Circuit because the Ninth Circuit granted en banc review for *Hayward*. *Hayward v. Marshall*, 2008 U.S. App. LEXIS 10538 (9th Cir. 2008).

section at trial wearing buttons with a photograph of the victim. 127 S.Ct. at 651. The Ninth Circuit applied two Supreme Court decisions that set forth the test to determine whether state-sponsored practices are so inherently prejudicial that they must be justified by an essential state policy or interest, and found that the state court violated clearly established federal law. *Id.* at 652. The Supreme Court found that the Ninth Circuit erred by finding that the Supreme Court had never addressed a claim that private-actor courtroom conduct was so inherently prejudicial as to deprive a defendant of a fair trial. *Id.* at 654.

Similarly, in *Landrigan*, the defendant refused to allow defense counsel to present mitigating evidence at a sentencing hearing. 127 S.Ct. 1933. In ruling on a habeas petition, the district court concluded that the defendant could not establish prejudice based on his counsel's failure to investigate further possible mitigating evidence. *Id.* at 1941. The Ninth Circuit found the district court's refusal to hold an evidentiary hearing in this circumstance to be an unreasonable application of Supreme Court precedent. *Id.* at 1942. The Supreme Court reversed, finding the district court did not abuse its discretion in refusing to grant petitioner an evidentiary hearing, because the Supreme Court had never addressed the situation where a criminal defendant interferes with his own counsel's efforts to present mitigating evidence to a sentencing court. *Id.*

*Irons*, which affirms *Sass*, was announced over seven months after *Musladin* and two months after *Landrigan*. Respondent argues "the precedential value of *Irons* is questionable because it did not address *Musladin*." Mem. Ps&As, p.13, ll.22-23. For this Court to find that *Musladin* or *Landrigan* effectively overruled *Irons* or *Sass*, "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

In *Musladin*, the Supreme Court noted that there was a split in the circuits regarding whether the cases the Ninth Circuit relied on applied to spectator conduct. 127 S.Ct. at 654, and the three concurring justices would have found that clearly established federal law applied to the spectator conduct at issue. *Id.* at 655-658. Likewise, the *Landrigan* decision was 5-4, with the four dissenting justices willing to apply the test the Ninth Circuit relied on as clearly established federal law. Thus, reasonable jurists disagree with respect to application of the term "clearly established federal law" when determining

whether existing Supreme Court precedent–which is not directly on point–qualifies as clearly established federal law in a given context.

The Ninth Circuit extended *Hill* from the prison disciplinary context to the prison parole context, "because both directly affect the duration of the prison term." *Sass*, 461 F.3d at 1128. That holding is not undercut by *Musladin* or *Landrigan* for at least two reasons. First, those cases interpret the phrase "clearly established federal law" under the same standard as the Ninth Circuit in *Sass*, and reasonable jurists can disagree with the application of that standard in any given context, including the one at issue here. Second, the Supreme Court in *Hill* in fact applied the "some evidence" standard to hearings held in custodial settings that affect the duration of a prisoner's sentence. *Sass*, 461 F.3d at 1128. Thus, the holdings of *Musladin* and *Landrigan* are not "clearly irreconcilable" with *Sass* and *Irons*. *Gammie*, 335 F.3d at 900. The Court therefore **RECOMMENDS REJECTING** Respondent's contention that Petitioner does not have a federally-protected liberty interest in parole, or that the "some evidence" standard of *Hill* does not apply.

      **B.**      **Whether "Some Evidence" Supports the Board's Decision.**

Petitioner argues that the Board's decision to deny him parole relied solely on unchanging factors, such as the nature of the offense, Petitioner's non-violent prior convictions and his prison misbehavior over a six year period. Pet'n at 13. He argues their decision is not supported by "some evidence." Pet'n at 12. He says that by not setting a parole date, the Board has arbitrarily commuted his sentence to life without the possibility of parole. Pet'n at 19. Respondent argues that the Board's decision passes the "some evidence" test because the decision was not based solely on outdated, immutable factors.

Here, the Board relied on some static factors, such as the cruel and violent manner of the offense, the motive, the lack of insight regarding the offense due to substance abuse, and Petitioner's prior criminal conduct. But the Board also relied on a number of non-static factors, namely, his prison disciplinary history, the psychiatric report and the more recent nature of his positive progress. They suggested that Petitioner remain discipline-free to improve his discipline record, continue to attend self-help programs and take advantage of educational and vocational opportunities, where available. Under the "some evidence" test, the Board's decision need only be supported by "a modicum of evidence."

*Hill*, 472 U.S. at 455. A court need not examine the entire record, independently assess the credibility of witnesses or weigh the evidence. *Id.* The only relevant question is whether any evidence supports the Board's decision. *Id.* at 455-456. This Court finds that some evidence, in the form of both static and non-static, developing factors, supports the Board's decision, so that the state court decisions were neither contrary to nor unreasonable applications of clearly established federal law.

Finally, Petitioner argues that the Board relied solely on immutable factors to justify its denial of parole, which it cannot do under *Biggs*, 334 F.3d 910. It is unclear whether clearly established federal law provides that a due process violation can arise from the continued use of static factors as suggested in *Biggs*. The Ninth Circuit has stated, in an unpublished case,[3] that

> There is no "clearly established federal law, as determined by the Supreme Court of the United States," that limits the number of times a parole board may deny parole to a murderer based on the brutality and viciousness of the commitment offense. (fn 5.) The *dicta* in Ninth Circuit cases like *Biggs v. Terhune,* 334 F.3d 910, 916-917 (9th Cir. 2003), are not holdings of the Supreme Court . . .

*Culverson v. Davison*, 237 Fed. Appx. 174, 175 (9th Cir. 2007). Even assuming a due process violation could result from reliance on only static factors, that did not happen here. As explained above, the Board relied on both static and non-static factors to justify its denial of parole.

This Court **RECOMMENDS** that Petitioner's due process claim based on application of the "some evidence" test be **DENIED**.

### C. Federal Courts and State Standards of Judicial Review.

Petitioner argues that California's parole statutes and regulations grant him a liberty interest in parole, and that only if the committed offense is especially egregious, can the crime be used to primarily justify denial of parole. Pet'n at 25. Petitioner says the circumstances of the stabbing were not exceptional or particularly egregious, and cites to the District Attorney's letter submitted to the parole board for Petitioner's 2003 hearing:

> There is no evidence to show that the defendant (Avila) planned or intended to kill the victum other than the fact the stabbing was inflicted at the chest, head area, of victim. There is no evidence to show that the

---

[3] Unpublished Ninth Circuit decisions may be cited starting with decisions issued in 2007. *See* Ninth Cir. Rule 36-3. Although still not binding precedent, unpublished decisions have persuasive value and indicate how the Ninth Circuit applies binding authority.

> defendant was even aware of the serious nature of the injury he inflicted other than the blood he would have observed on his knife and clothing.

Pet'n at 27-28. Respondent argues that federal courts are not bound by state procedural protections to determine whether a federal constitutional violation has occurred.

The Court is not persuaded by Petitioner's argument here. First, states can impose more restrictive protections that those provided by the federal Constitution. *California v. Greenwood*, 486 U.S. 35, 43 (1988). As explained above, the state courts' decisions affirming the Board's decision are not contrary to nor unreasonable applications of federal law. Second, if there really has been a violation of state law, clearly established federal law provides that federal habeas relief is not available merely for an alleged error in the interpretation or application of state law. *Estelle v. McGuire*, 502 62, 67-68 (1991). Third, even if the state cases that Petitioner relies on did hold that a parole board could only primarily rely on an especially egregious commitment offense to justify denial of parole, those cases are inapposite because the Board here relied on several factors other than the commitment offense. There is no indication that the Board relied *primarily* on the factors of Petitioner's offense to justify the denial of parole.

This Court **RECOMMENDS** that Petitioner's due process claim based on application of state law be **DENIED**.

**D.     Eighth Amendment Claim.**

Petitioner argues that the six-month delay in conducting his second parole hearing violated his eighth amendment rights because the delay has increased his time of confinement and will not count toward parole release. Pet'n at 36-37. Respondent argues Petitioner has not alleged a cognizable claim for habeas relief under the eighth amendment.

Petitioner presented his eighth amendment claim to the superior court, appellate court and state supreme court. No court addressed the claim. Where no lower state court opinion addresses a claim properly presented to the state courts and denied by the state's highest court without a statement of reasoning–as here–a federal habeas court reviewing such a claim must independently review the record to determine whether the state supreme court clearly erred in applying controlling federal law when it denied the claim without reason. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

The eighth amendment forbids cruel and unusual punishments. It "contains a 'narrow

proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (citing *Harmelin v. Michigan*, 501 U.S. 957, 996-997,(1991)). It forbids sentences that are grossly disproportionate to the severity of the crime. *Id.* at 21. Successful challenges to non-capital sentences, however, are "exceedingly rare." *Id.* The relevant inquiry is whether Petitioner's sentence resulted in "one of 'the rare cases in which a . . . comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" *U.S. v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992) (citing *Harmelin*, 501 U.S. at 1004).

Petitioner does not allege a cognizable habeas claim under the eighth amendment because he does not challenge the length of his sentence in proportion to his offense. While he says he was better-suited for parole six months prior, he offers no reason to show that a shorter period of time in prison would have worked to his advantage. Further, while the Board supports his current efforts at reform, they say that Petitioner needs to spend more time in prison while continuing with this good behavior. Finally, even if the Court construes Petitioner's argument as a challenge to the disportionality of his sentence, a term of 25 years to life for first degree murder does not appear to be a disproportionate sentence. *See Andrade*, 538 U.S. 63 (finding a sentence of two consecutive terms of 25 years to life for two counts of petty theft for stealing videotapes valued at less than $200 under California's Three Strikes Law was not a rare and grossly disproportionate sentence).

## CONCLUSION

Petitioner has failed to show that the state courts' determinations were contrary to or an unreasonable application of clearly established federal law, or that they were based on an unreasonable determination of the facts. Even though this Court recommends rejecting Respondent's argument that Petitioner does not have a federally-protected liberty interest in parole, it **RECOMMENDS** that the Petition be **DENIED** in its entirety because the Board's decision is supported by some evidence and Petitioner's eighth amendment claim is not cognizable for habeas relief.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than ***July 29, 2008***, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned

"Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *August 8, 2008*.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 7, 2008

Hon. Nita L. Stormes
U.S. Magistrate Judge