UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID AVILA,<br><br>           Petitioner,<br><br>v.<br><br>L. E. SCRIBNER, Warden,<br><br>           Respondent. | Civil No. 07cv1709-L(NLS)<br><br>**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION AND REMANDING THE CASE TO THE MAGISTRATE JUDGE FOR A SUPPLEMENTAL REPORT AND RECOMMENDATION** |

      Petitioner David Avila, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). He claims that his due process rights were violated because he was denied parole and that his due process and Eighth Amendment rights were violated by delay in the parole proceedings. The case was referred to United States Magistrate Judge Nita L. Stormes for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(d). The Magistrate Judge issued a Report and Recommendation, recommending the Petition be denied in its entirety. Petitioner timely objected. Respondent did not respond. For the reasons which follow, the Report and Recommendation is **ADOPTED** as modified herein insofar as it addresses Petitioner's claims. Petitioner's claims that denial of parole violated his due process rights and that the delay in the parole proceedings violated his Eighth Amendment rights are **DENIED WITH PREJUDICE**. The recommendation to deny the Petition in its entirety is **REJECTED**. The case is

**REMANDED** with respect to Petitioner's due process claim based on the delay in parole proceedings, which was not addressed in the Report and Recommendation.

In reviewing a magistrate judge's report and recommendation, the district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under this statute, "the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made, but not otherwise*." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*) (emphasis in original); *see Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1225-26 & n.5 (D. Ariz. 2003) (applying *Reyna-Tapia* to habeas review). Petitioner objects to the recommendation to deny the Petition and to several of the Magistrate Judge's findings in support of that recommendation. Upon performing the requisite *de novo* review, the court concurs with Judge Stormes' recommendations to deny the claims addressed in the Report and Recommendation. The case is remanded with respect to the claim which was not addressed.

In 1986 Petitioner pled guilty to first degree murder and received a sentence of 25 years to life. He became eligible for parole on July 6, 2004. (Pet. Ex. A at 1.) At his first parole hearing on July 16, 2003 parole was denied for two years. (Pet. Ex. D at 53.) After two years and six months, on January 10, 2006, parole was denied again for two years. (Pet. Ex. A at 92.) Despite Petitioner's progress while incarcerated and other factors tending to indicate suitability for parole, the denial was based on several unsuitability factors: (1) the crime had been carried out in an especially cruel and violent manner; (2) escalating pattern of criminal conduct prior to the commitment offense; (3) unstable social history and drug abuse at a young age; (4) prison disciplinary history, including violence, until 1998, with the last two offenses being mutual combat and possession of contraband; (5) significant risk factors noted in the mental health evaluation from 2003; and (6) the relatively recent nature of Petitioner's gains during commitment. (*Id*. at 82-89.) Petitioner was denied parole again on January 16, 2008. (Objections at 8.) Only the denial of parole in 2006 is the subject of the Petition before the court. (*See* Pet. at 1.)

The Supreme Court has "clearly established that a parole board's decision deprives a prisoner of due process with respect to [his liberty interest in parole], if the board's decision is not supported by some evidence in the record or is otherwise arbitrary." *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (internal quotation marks and citations omitted); *see also id.* at 850. The relevant inquiry is whether any evidence supports the board's decision to deny parole. *See Superintendent of the Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the . . . board.

*Hill*, 472 U.S. at 455-56. This standard "does not require evidence that logically precludes any conclusion but the one reached by the . . . board." *Id*. at 477. However, "[t]he evidence underlying the board's decision must have some indicia of reliability" and "continued reliance . . . on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs v. Terhune*, 334 F.3d 910, 915, 917 (9th Cir. 2003); *see also Irons*, 505 F.3d at 854.

Petitioner first objects to the Report and Recommendation arguing that denial of parole was based only on unchanging factors. (Objections at 3-10.) The argument is based on the premise that any factor which occurred in the past is considered unchanging for purposes of the due process analysis. The relevant case on this point, *Biggs v. Terhune*, identified "the circumstance of the offense and conduct prior to imprisonment" as "unchanging." 334 F.3d at 917; *see also Irons*, 505 F.3d at 854 (inmate's commitment offense); *In re Lawrence*, 44 Cal.4th 1181, 1221 (2008) (circumstances of the offense and criminal history). The court is not aware of any binding federal authority for the proposition that a prisoner's post-incarceration disciplinary record or mental health evaluations are also considered unchanging. In this case, in addition to the unchanging factors of his commitment offense and conduct prior to imprisonment, the decision to deny parole is supported by Petitioner's disciplinary record in prison, the 2003

mental health evaluation, and the relatively recent nature of his rehabilitative gains. Petitioner does not dispute his disciplinary record, the contents of the 2003 evaluation or the time line pertaining to his gains while incarcerated.

Assuming *arguendo*, that, as Petitioner contends, the denial were based primarily on the circumstance his commitment offense, a finding of a due process violation does not follow in this case. The inquiry whether the board's suitability determination was supported by "some evidence," as required by clearly established federal law, is "framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851 ("we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole").[1]

In California, "the denial of parole may be predicated on a prisoner's commitment offense only where the Board can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Irons*, 505 F.3d at 852 quoting *In re Dannenberg*, 34 Cal.4th 1061, 1071 (2005); *see also Lawrence*, 44 Cal.4th 1181. Specifically,

> The Board's parole decisions are governed by section 3041 and Title 15, section 2402 of the California Code of Regulations. Pursuant to statute, the Board shall normally set a parole release date one year prior to the inmate's minimum eligible parole release date, and shall set the date in a manner that will provide uniform terms for offenses of similar gravity and magnitude *in respect to their threat to the public*. Subdivision (b) of section 3041 provides that a release date must be set unless the Board determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the *public safety* requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.
>
> Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the Board in carrying out the mandate of the statutes. This regulation is designed to guide the Board's assessment of whether the inmate poses an unreasonable risk of danger to society if released from prison, and thus whether he or she is suitable for parole.

*In re Shaputis*, 44 Cal.4th 1241, 1256 (2008) (internal quotation marks, ellipses, brackets, citations, and footnotes omitted, emphases in original).

---

[1] To the extent the Report and Recommendation suggests otherwise (*see* Report and Recommendation at 11), it is rejected.

One of the circumstances enumerated in the regulations tending to show unsuitability is whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2402(c)(1). In Petitioner's case, the board made this finding. (Pet. Ex. A at 82, 88.)

The factors to be considered in making this determination include, in pertinent part, whether "the victim was abused, defiled or mutilated during or after the offense;" the offense "was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering;" or "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. § 2402(c)(1)(C)-(E).

The board found that Petitioner's offense met these factors. (Pet. Ex. A at 82, 83-84, 86-87, 88.) It noted that Petitioner stabbed and killed an unarmed man for what appeared to be his wallet, or possibly just for change. (Pet. Ex. A at 82.) At the time of the offense, Petitioner was intoxicated and on drugs. (*Id*. at 82, 86.) He and an associate were "hanging around" a liquor store prior to the victim's arrival. (*Id*. at 83.) When the victim left the store and went to open his car door, Petitioner's associate or Petitioner demanded money. (*Id*.) A fight ensued shortly thereafter. (*Id*.) Petitioner was seen entering the struggle with a knife and stabbing the victim once in the chest area. (*Id*.) Petitioner and his associate were then seen leaving the area with the victim's wallet. (*Id*.) The victim drove to his girlfriend's home, collapsed in the driveway, and bled to death. (*Id*. at 83-84.)

Based on these facts, the board found that the motive for the offense was trivial in relation to the offense itself because "some aspect of minor thievery ended up in the death and murder of an individual" (*id*. at 83; *see also id*. at 86-87, 88); the victim was abused (*id.* at 88); and "the offense was carried out in a manner which demonstrated certainly an exceptional callous disregard for human suffering [and life] as the man lived for a while as he bled to death . . ." (*id*. at 88).

The facts as found by the board and adopted by the state court provide support for the board's finding. Petitioner argues that he "refutes in part" the board's factual basis for the

/ / / / /

findings. (Objections at 11.) He points to his version of the events contained in the Correctional Counselor's Life Prisoner Evaluation from 2005. (*Id.*; Pet. Ex. C at 1.)

"[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not met this burden.

However, even if Petitioner's version of the events were accepted at face value, the board's findings are not refuted. According to Petitioner, he approached the victim to get change for a dollar. (Pet. Ex. C at 1.) The victim responded to him in a derogatory manner, Petitioner became upset and started arguing with the victim, the victim kicked him, and they started to fight. (*Id.*) When Petitioner realized the victim was getting the advantage, he swung his knife in the victim's stomach area "to scare him off." (*Id.*) The victim let out a cry and drove off in his car. (*Id.*) Under this version of the events, the board's factual findings pursuant to section 2402(c)(1) factors regarding the egregiousness of the commitment offense remain supported by some evidence.

However, "the aggravated nature of a commitment offense does not, in every case, provide relevant evidence that an inmate remains dangerous," *Shaputis*, 44 Cal.4th at 1254; *Lawrence*, 44 Cal.4th at 1213, 1217. The denial of parole decision may be based "upon the circumstance of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such reliance *only* if those facts support the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety." *Shaputis*, 44 Cal.4th at 1255 (emphases in original); *see also Lawrence*, 44 Cal.4th at 1214, 1221. For example, in cases where "the inmate . . . has continued to engage in criminal conduct postincarceration . . ., the aggravated circumstances of the commitment offense may well continue to provide 'some evidence' of current dangerousness even decades after commitment of the offense." *Lawrence*, 44 Cal.4th at 1228.

In this case the board found that for more than ten years after incarceration Petitioner engaged in serious disciplinary violations in prison, including violence. In addition, the 2003 mental health evaluation noted significant risk factors. Petitioner does not dispute the factual

accuracy of these factors. When viewed in light of these factors, the circumstance of the offense continues to be probative of Petitioner's current dangerousness. *See Lawrence*, 44 Cal.4th at 1228. In light of the foregoing, the board's decision to deny parole was supported by some evidence.

Furthermore, federal precedent supports a finding of no due process violation. Like Petitioner here, the petitioner in *Biggs v. Terhune* was serving a first-degree murder sentence of 25 years to life. 334 F.3d at 912. He had been incarcerated for fifteen years at the time of the parole haring. *Id*. Unlike Petitioner, Mr. Biggs had been a model inmate throughout his period of incarceration and the only factors for denial of parole which were supported by the record were the circumstances of the offense and conduct prior to imprisonment. *Id*. at 912, 915-16. Nevertheless, the court found his due process rights were not violated when parole was denied. *Id*. at 913, 916. Similarly, in *Irons v. Carey*, the petitioner was serving a seventeen-years-to-life sentence for a second degree murder. 505 F.3d at 849. Again, unlike Petitioner, Mr. Irons had no prior criminal history and had been an exemplary inmate throughout his incarceration. *Id*. A parole release date had been denied him five times. *Id*. At the time of the sixth denial, he had served sixteen years. *Id*. at 849-50. The only ground for denial of parole which was supported by any evidence was the nature of the commitment offense. *Id*. at 852. Nevertheless, the Ninth Circuit reversed the district court's grant of relief and found no due process violation. *Id*. at 852-53.

In both cases "the [parole board's] decision was made before the inmate had served the minimum number of years required by his sentence." *Irons*, 505 F.3d at 853. The court noted that "given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." *Id*. at 853-54. Same is true in Petitioner's case. When parole was denied in 2006, Petitioner had served twenty of the 25 minimum number of years required by his sentence.

Neither *Biggs* nor *Irons* found a due process violation under circumstances more conducive to parole than Petitioner's. This precludes the court from accepting Petitioner's due process argument. *See id*. at 853. Accordingly, the state court's denial of Petitioner's due

process claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d).

Petitioner also objects on the grounds that the Magistrate Judge erred when she did not find fault with the parole board's factual finding that Petitioner's offense was sufficiently grave under California Penal Code Section 3041(a) to support denial of parole. (Objections at 10-12.) He argues that the circumstances of his crime were not particularly egregious when compared to other first degree murders. Specifically, relying on California Penal Code § 3041(a), he maintains that in denying parole, the board must evaluate the egregiousness of his crime by comparing it to other offenses of the same class. (Objections at 11.)

Aside from being irrelevant because the board relied on factors in addition to the gravity of the offense, this argument was rejected by California Supreme Court:

> Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on grounds the particular offender's criminality presents a *continuing public danger*.

*Dannenberg*, 34 Cal.4th at 1070 (emphases in original).

> When the time comes to evaluate the individual life inmate's suitability for release on parole, the [Board] is authorized – indeed, required – to *eschew* term uniformity, based simply on similar punishment for similar crimes, in the interest of *public safety in the particular case*.

*Id.* at 1083 (emphases in original); *see also Lawrence*, 44 Cal.4th at 1217 ("comparative analysis is incompatible with our decision in *Dannenberg*"); *Shaputis*, 44 Cal.4th at 1254 ("the determination whether an inmate poses a current danger is not dependent upon whether his . . . commitment offense is more or less egregious than other, similar crimes").

Last, Petitioner objects to the Magistrate Judge's recommended finding that the delay between his first and second parole hearings did not violate his constitutional rights. Although parole was denied in 2003 for two years, the next parole review hearing was not held until two years and six months later. Petitioner claims that the six-month delay, for which he did not

/ / / / /

receive any type of credit, violated his Eighth Amendment and due process rights. (Mem. of P.&A. in Supp. of Pet. at 35-38; Traverse at 2, Objections at 13-17.)

As relevant to the context of this case, the Eighth Amendment forbids punishment grossly disproportionate to the severity of the crime. *Ewing v. California*, 538 U.S. 11, 21 (2003); *Andrade*, 538 U.S. 63, 72 (2003). Under this standard, the Eighth Amendment is violated only in extraordinary cases. *Andrade*, 538 U.S. at 73, 77.

Petitioner committed the commitment offense when he was 22. (Mem. of P.&A. in Supp. of Pet. at 3.) Nevertheless, he had already accumulated a track record with the police. As a juvenile he was twice arrested, once for vehicle theft and once for receiving stolen property, but was counseled and released each time. (Pet. Ex. A at 39.) Later, his father reported him to the police for stealing his pistol, for which Petitioner spent ninety days at juvenile hall. (*Id.*) As an adult he was arrested for possession of a toxic substance such as glue or paint thinner with intent to cause intoxication or similar condition, *see* Cal. Penal Code § 381, and spent thirty days in jail. (*Id.* at 40.) Subsequently, he was arrested on a drug charge, was directed to a drug diversion program and placed on probation without serving any time. (*Id.* at 40-41.) After that, he was arrested pursuant to California Health and Safety Code Section 11378.5 for sniffing glue, but the charge was rejected for lack of probable cause. (*Id.* at 41.) Petitioner admitted that his commitment offense, first degree murder, which he committed while intoxicated (*id.* at 29), was the culmination of his substance abuse problems (*id.* at 42).

Even with a six month delay in consideration for parole, Petitioner's sentence of 25 years to life for first degree murder is not grossly disproportionate. A sentence of two consecutive terms of 25 years to life under California's Three Strikes Law was not found to violate the Eighth Amendment for a petitioner convicted of petty theft for stealing videotapes valued at less than $200. *Andrade*, 538 U.S. at 66-68, 77. Prior to this sentence, Mr. Andrade was convicted twice of misdemeanor theft, twice of transportation of marijuana and once of residential burglary. *Id.* at 66-67. Based on the foregoing, the court concurs with the Magistrate Judge's recommendation to deny Petitioner's delay claim to the extent it is based on the Eighth Amendment.

1  Petitioner argued, initially and in his objections, that the six month delay without notice
2 or showing of good cause violated his due process rights.  (Mem. of P.&A. in Supp. of Pet. at
3 35-38;  Traverse at 2, Objections at 13-17.)  The Magistrate Judge did not address the due
4 process grounds for the delay claim.  To the extent the delay claim is based on due process, the
5 case is remanded to the Magistrate Judge for a supplemental report and recommendation.

6  Based on the foregoing, the Report and Recommendation is **ADOPTED** as modified
7 herein to the extent it recommends denial of Petitioner's claims that denial of parole violated his
8 due process rights and that the six-month delay in the parole proceedings violated his Eighth
9 Amendment rights.  The recommendation to deny the Petition in its entirety is **REJECTED**.
10 The case is **REMANDED** to the Magistrate Judge for a supplemental report and
11 recommendation regarding Petitioner's delay claim, but only to the extent the claim is based on
12 due process.

13  **IT IS SO ORDERED**.

15 DATED:  December 22, 2008

M. James Lorenz
United States District Court Judge

COPY TO:

HON. NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL